DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, GMAC Mortgage Corp. (GMAC), appeals from a decision of the Medina County Court of Common Pleas, which found GMAC liable for breach of contract and gross negligence and awarded compensatory damages, punitive damages and attorney fees to Appellees, John and Terasa Titch. We affirm.
 I. {¶ 2} John and Terasa Titch sought to build a new home, which required construction and financing. The Titchs entered into an agreement with Connecticut Homes, Inc., to serve as the general contractor, hire the subcontractors, and oversee construction of the home. The Titchs also entered an agreement with GMAC, wherein GMAC would disburse almost $300,000 to Connecticut Homes in the form of construction loan payments and recoup that money from the Titchs in the form of a long-term mortgage. The aspect critical to this case is that GMAC was not to disburse any money to Connecticut Homes until obtaining lien waivers ensuring that the work was acceptable and the subcontractors had been paid.
 {¶ 3} However, GMAC disbursed the payments without obtaining the lien waivers. Thus, when Connecticut Homes' principal ran off with the money without paying the subcontractors or completing the construction, the subcontractors were able to foreclose on their liens. Specifically, Morgan Co. filed a foreclosure action against the Titchs, Connecticut Homes, GMAC, and six other subcontractors. GMAC answered the complaint by denying the allegations.
 {¶ 4} In January 2001, the Titchs answered and filed a cross-claim against GMAC, charging breach of contract and gross negligence, and seeking punitive damages for reckless indifference as well as attorney fees. GMAC answered the cross-claim and proceeded to discovery, with the several parties, including the Titchs, exchanging numerous discovery requests.
 {¶ 5} In March 2001, the Titchs served GMAC with Civ.R. 36(A) requests for admissions, including admissions that GMAC undertook a duty in disbursing the construction loan funds, GMAC failed to obtain the lien waivers before disbursing said funds, the Titchs were damaged by GMAC's negligence and reckless indifference, and the Titchs were not at fault for any nonpayment to the lien holders. The Titchs offered GMAC 28 days to respond. GMAC never responded, and the requests were deemed admitted in accordance with the Civ.R. 36(A). The Titchs later filed a motion to compel discovery from GMAC and others, for other outstanding requests, which the court granted but with a determination of any attorney fees award left pending.
 {¶ 6} In June 2001, the Titchs filed a motion for summary judgment against GMAC, for liability on the cross-claim, which had appended to it an affidavit by the Titchs and the requests for admissions that had been deemed admitted by GMAC. In July 2001, GMAC moved for an extension of time to reply, and the court granted the motion, allowing GMAC until September 21, 2001. GMAC never replied. On September 24, 2001, the court heard the matter and thereafter granted partial summary judgment to the Titchs, on the liability issue, with the damages to be determined by a jury at trial.
 {¶ 7} On December 7, 2001, the court conducted a trial on the damage issue. The jury returned a general verdict of $185,000 for the Titchs, and answered four interrogatories: (1) $155,000 was compensatory damages; (2) GMAC did act so maliciously, oppressively or wantonly as to justify punitive damages; (3) $30,000 was punitive damages; and, (4) the Titchs were entitled to attorney fees. In formalizing the verdict the court set the attorney fees issue to be decided by a magistrate. In December 2003, the magistrate found that the Titchs had incurred $66,302.39 in attorney fees, but only a portion was inseparable from GMAC's conduct. The magistrate recommended $38,523.47 plus interest dating from the time of the decision, December 7, 2001, be paid by GMAC to the Titchs. Both parties contested the magistrate's findings, but on January 22, 2004, the trial court issued an order adopting the decision in its entirety.
 {¶ 8} Finally, following trial, GMAC had filed a motion for remittitur, which the Titchs opposed. On January 27, 2004, the trial court denied GMAC's motion for remittitur, effectively concluding the final outstanding issue in the case. GMAC timely appealed, asserting six assignments of error for review.
 II. A. First Assignment of Error
"The trial court erred in granting summary judgment on liability on the Titch's single cross-claim against [GMAC]."
 {¶ 9} GMAC alleges that the trial court improperly granted summary judgment to the Titchs, based on two alterative arguments. We disagree with both.
 {¶ 10} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1, 2. Summary judgment is proper if: (1) there exists no genuine dispute of any material fact; (2) the issue is therefore a matter of law; and (3) reasonable minds could come to but one conclusion, that being in favor of the moving party and adverse to the non-moving party. Civ.R. 56(C); Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 11} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id. Once the moving party's burden has been satisfied, the burden shifts to the non-moving party, as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115.
 {¶ 12} In the present case, the Titchs moved for summary judgment on the liability issues, and supported that motion with an affidavit by the Titchs and the Civ.R. 36(A) requests for admissions that had been deemed admitted by GMAC. Civ.R. 56(C) requires supporting evidence to be of a certain form:
"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits,
transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis added.) Civ.R. 56(C).
Therefore, the Titchs satisfied their burden as the moving party, at least in form, and GMAC was thereafter obligated to produce some reciprocal evidence of a genuine issue of material fact. See Mitseff,38 Ohio St.3d at 115. However, GMAC never replied. GMAC never replied in any manner, despite seeking and obtaining leave for an additional 60 days in which to reply. GMAC never replied to this motion for summary judgment, just as GMAC never replied to the Civ.R. 36(A) requests for admissions. GMAC never replied to this motion, just as GMAC had never replied to the discovery requests or the motion to compel. GMAC failed its burden to identify any evidence in the record supporting the existence of some material fact in dispute.
 {¶ 13} On September 24, 2001, the trial court heard the matter and the next day granted partial summary judgment to the Titchs, stating:
"After reviewing the evidence allowable under Civ.R. 56(C), and construing that evidence in the light most favorable to the nonmoving party, the Court finds there are no genuine issues of material fact to litigate. * * * Defendants John J. Titch and Terasa M. O'Neil-Titch are granted judgment as to liability on their Crossclaim against GMAC Mortgage Corporation."
 {¶ 14} GMAC replies now. GMAC contends that the summary judgment was based solely on the requests for admissions that were deemed admitted under an "archaic procedural rule." GMAC argues that their distaste for Civ.R. 36(A) invalidates the admissions (if not the rule), thereby rendering the resulting summary judgment improper. This argument is patently wrong at best, frivolous at worst, and in either event warrants no further discussion at this point as it is discussed fully in the second assignment of error below.
 {¶ 15} GMAC also offers a second reply. Despite insisting that the requests for admission were the sole basis for the summary judgment, GMAC insists as an alternative argument that the trial court granted summary judgment simply because GMAC failed to respond to the Titchs' motion. Although not as meritless as the first argument, this contention is unsupported by the record and therefore unavailing to GMAC.
 {¶ 16} The Titchs had satisfied their burden to disprove any genuine issue of material fact, and thereby deem summary judgment appropriate. See Dresher, 75 Ohio St.3d at 292. Thus, the burden shifted to GMAC to show some genuine issue of fact. Mitseff, 38 Ohio St.3d at 115. Having failed such a showing, the trial court was left to consider whether, viewing the evidence most strongly in favor of GMAC, reasonable minds could come to but one conclusion: that the Titchs were entitled to judgment as a matter of law. Civ.R. 56(C); Temple, 50 Ohio St.2d at 327. Evidently, the trial court so found; however, we must undertake a de novo review. See Grafton, 77 Ohio St.3d at 105.
 {¶ 17} Notably, the evidence before this Court is limited to the evidence that was properly before the trial court. See Norris,70 Ohio St.2d at 2. Thus, we consider whether the facts established by the Titchs' affidavit and GMAC's admission are conclusive on GMAC's alleged breach of contract and gross negligence.
 {¶ 18} For breach of contract, the elements are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. See Preferred Capital, Inc., v.Sturgil, 9th Dist. No. 21787, 2004-Ohio-4453, at ¶ 11. The affidavit sets out that the parties entered into a contract, that GMAC failed to fulfill its obligations under the contact, and that this failure caused harm to the Titchs. GMAC does not dispute these facts or offer any alternative theory. Rather, GMAC erroneously contends that Civ.R. 36(A) admissions are not allowed and that summary judgment cannot be granted when opposing party does not respond. The facts before the court, as applied to the prevailing law, leave us with little doubt that reasonable minds could come to but one conclusion, that GMAC is liable to the Titchs on the contract claim.
 {¶ 19} For negligence, a plaintiff must show a duty and breach of that duty as the direct and proximate cause of an injury. Chambers v. St.Mary's School (1998), 82 Ohio St.3d 563, 565. Gross negligence is such "reckless and heedless conduct [as] would amount to a legal willful tort." Payne v. Vance (1921), 103 Ohio St.3d 59, 69. Both the affidavit and the admissions set out that GMAC contracted, promised and repeatedly reassured the apprehensive Titchs that they would fulfill their duty to obtain lien waivers before disbursing payment. Furthermore, it is evident that GMAC did not obtain those waivers, that failure to obtain the lien waivers was the cause of significant harm to the Titchs, and that the harm was in excess of $20,000. Again, GMAC has done little more than protest that it should not be prejudiced by its failure to reply to the requests for admissions or the motion for summary judgment. We conclude, based on these facts as applied to the prevailing law, that reasonable minds could come to the sole conclusion that GMAC is liable to the Titchs on the gross negligence claim.
 {¶ 20} Based on the facts before us, even viewed most favorably to GMAC, we must agree with the trial court that summary judgment in favor of the Titchs was appropriate. GMAC's first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court improperly deemed requests for admissions as admitted by [GMAC] and allowed the Titches to present those improper admissions to the jury."
 {¶ 21} GMAC alleges that the trial court acted improperly by following Civ.R. 36(A) and deeming admitted the requests for admission that the Titchs sent to GMAC but to which GMAC made no response. We disagree.
 {¶ 22} When a party files with an opponent some requests for admissions, and that opponent fails to respond, the pertinent provisions of Civ.R. 36 state:
"The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Civ.R. 36(A).
"Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Civ.R. 36(B).
 {¶ 23} First, GMAC contends that they did deny the admissions. This statement is unsupported by the record. There is no record of such a response ever being filed, no affidavit or sworn testimony that such a response was made, and no explanation as to why the Titchs and the trial court so confidently asserted and concluded that there had been no such response. We cannot conclude that GMAC denied these requests for admissions within the 28 days following their receipt of the requests.
 {¶ 24} Next, GMAC refutes its own first argument:
"In any event, whether the requests for admissions were answered or not is not determinative of this Assignment of Error. To the contrary, [GMAC]'s Assignment of Error is based upon the fact that the trial court deemed the request for admissions admitted, thereby determining liability through a procedural device as opposed to a consideration of the law and facts."
GMAC apparently fails to realize that the civil rules, even those GMAC finds distasteful, are in fact the law. See Rockey v. 84 Lumber Co.
(1993), 66 Ohio St.3d 221, 224. Therefore, by following Civ.R. 36(A), the trial court did conduct an appropriate consideration of the law, and we find no error in the trial court's conduct in doing so. See, generally,Cleveland Trust Co. v. Willis (1985), 20 Ohio St.3d 66 (recognizing the permissive nature of Civ.R. 36, that the court may permit a late response to the requests if the lateness is justified). GMAC's second assignment of error is overruled.
 C. Third Assignment of Error
"The jury's damage award was against the manifest weight of the evidence inasmuch as it substantially exceeds the amount necessary to make the Titches whole."
 {¶ 25} GMAC alleges that the jury incorrectly awarded damages to the Titchs, despite GMAC's asserted evidence that the damage was due to the misconduct of other parties, that the award exceeds the contract based benefit-of-the-bargain remedy, and that there was no evidence of recklessness or wantonness, other than GMAC's admissions. Based on this argument, GMAC insists that the jury's finding was against the manifest weight of the evidence. We disagree.
 {¶ 26} Reversal on manifest weight grounds is reserved for the exceptional case where the evidence demonstrates that the "trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [decision] must be reversed." State v. Otten (1986),33 Ohio App.3d 339, 340. Accord State v. Thompkins (1997),78 Ohio St.3d 380, 387. Upon presentation of conflicting testimony, a decision is not against the manifest weight of the evidence simply because the jury believed one party's version over the other's. See Statev. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757.
 {¶ 27} First, GMAC argues that the evidence at trial demonstrated that the Titchs are entitled to nothing because they already received $290,000 from GMAC, the benefit of their contractual bargain. GMAC alleges that any further costs, such as repairs necessary to bring the house into conformance with their expectations, are the liability of others, not GMAC. Correspondingly, GMAC argues that the Titchs obtained a default judgment of $50,000 from Connecticut Homes, which should be subtracted from any compensatory damages due to the Titchs. Next, GMAC contradicts its first argument by alleging that the Titchs's remedy is limited to the benefit of their contractual bargain, and that the evidence produced at trial proves this amount to be only $51,065 and not the $155,000 awarded by the jury. Finally, GMAC argues that the Titchs not only failed to prove that GMAC acted recklessly, maliciously or wantonly, as would be necessary to justify punitive damages, but furthermore, that the evidence proves that GMAC acted diligently to ensure that there were no liens placed on the property.
 {¶ 28} We begin by noting that at every relevant point, the Titchs' crossclaim, the trial court's partial summary judgment ruling, and the jury's award, all encompassed claims for both breach of contract and gross negligence.[1] At trial, the Titchs produced evidence of almost $200,000 in damages, including the testimony of three experts. In contrast, GMAC did not rebut this evidence and even conceded over $100,000 in damages ($29,050 at one point and $73,558 at another) during GMAC's own closing argument. As such, we cannot say that the decision demonstrates that the jury clearly lost its way and created a manifest miscarriage of justice. Otten, 33 Ohio App.3d at 340; Thompkins,78 Ohio St.3d at 387.
 {¶ 29} At trial, both John and Terasa Titch testified to their relationship with GMAC, the circumstances underlying the suit, and the harm that had arisen from GMAC's conduct. John Titch testified that GMAC had assured him repeatedly, both verbally and in writing, that GMAC would verify the work, obtain the liens and ensure the quality completion of the construction. Yet, despite these promises, GMAC never sent a single inspector or prepared any inspection report before paying any of the eight separate construction disbursements to Connecticut Homes. The Titchs relied on GMAC, but when the trouble began with the contractors, the liens, the bill collectors, the harassment, and the lawsuits, GMAC made no response to the Titchs' repeated pleas for assistance. Terasa Titch testified to the stress and emotional strain that beset their family when GMAC failed to fulfill its empty promises that it would take care of them. This testimony was consistent with GMAC's admission that it had acted with reckless indifference to the harm to the Titchs. The jury could have found from this evidence that GMAC induced the Titchs into the agreement, and then abandoned them with reckless disregard or wanton indifference.
 {¶ 30} Finally, we must refute GMAC's assertion that the evidence proves that GMAC acted "diligently" to ensure that there were no liens placed on the property. While GMAC dutifully supported this assertion with a citation to the trial transcript, the referenced "testimony" is actually no more than GMAC's own counsel suggesting such diligence in a question posed to a witness on cross examination. We need not belabor the point that the opinion of GMAC's counsel during questioning is not the conclusive evidence of diligence that GMAC represents it to be in its brief on appeal.
 {¶ 31} We cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice. Otten, 33 Ohio App.3d at 340;Thompkins, 78 Ohio St.3d at 387. GMAC's third assignment of error is overruled.
 D. Fourth Assignment of Error
"The jury's damage award cannot as a matter of law create a windfall to the Titches, and as such, the trial court erred in denying [GMAC]'S motion for remittitur."
 {¶ 32} GMAC alleges that the jury granted the Titchs a windfall, and therefore the trial court incorrectly denied GMAC's motion for remittitur. We disagree.
 {¶ 33} Under the concept of remittitur, "if a verdict in an action for unliquidated damages is excessive, but not appearing to have been influenced by passion or prejudice, the court may, with the assent of plaintiff, reduce the verdict by remittitur to any amount warranted by the evidence." Larrissey v. Norwalk Truck Lines, Inc. (1951), 155 Ohio St. 207,219. Accord Burke v. Athens (1997), 123 Ohio App.3d 98, 101. As discussed in the third assignment of error, we cannot conclude, based on the evidence before the jury, that the amount awarded by the jury was excessive. Therefore, remittitur was neither necessary nor appropriate, and we can find no error in the trial court's decision. GMAC's fourth assignment of error is overruled.
 E. Fifth Assignment of Error
"The trial court erred when it allowed the Titches to recover from [GMAC] attorney's fees incurred as a result of services rendered on the Titches' claims against other parties."
 {¶ 34} GMAC alleges that the trial court incorrectly allowed the Titchs to recover attorney fees that were not limited to the Titchs claim against GMAC. Accordingly, GMAC argues that the attorney fees are disproportionate to their liability and insupportable as a matter of law. We disagree.
 {¶ 35} Decisions regarding the award of attorney fees are within the discretion of the trial court and will not be disturbed without an abuse of discretion. Motorists Mut. Ins. Co. v. Brandenburg (1995),72 Ohio St.3d 157, syllabus. At a minimum, when applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 36} The limitations on attorney fees are that the award of those fees must be necessary and proper. Motorists Mut. Ins. Co.,72 Ohio St.3d at 160. In the present case, the magistrate compiled and reviewed the evidence regarding the attorney fees and determined that the Titchs had incurred $66,302.39 in attorney fees, but only a portion was inseparable from GMAC's conduct. Therefore, the magistrate reasonably concluded that $38,523.47 was necessary and proper. The trial court reviewed and adopted the decision. Based on our review of this finding, we cannot conclude that the trial court's decision rises to an abuse of discretion. See Pons, 66 Ohio St.3d at 621. GMAC's fifth assignment of error is overruled.
 F. Sixth Assignment of Error
"The trial court improperly determined that interest began running on the Titches' attorney's fee award more than two years before the attorney's fees were awarded."
 {¶ 37} GMAC alleges that the trial court incorrectly determined that the date of judgment for the purpose of post-judgment interest was the date of the jury verdict, December 7, 2001. GMAC contends that the date of judgment for such purpose must be the date on which the attorney fees are tabulated, in this case January 22, 2004. We disagree.
 {¶ 38} Essentially, GMAC erroneously argues that attorney fees are the same as punitive damages, and since prejudgment interest is not allowed on punitive damages it cannot be allowed on attorney fees. See, e.g.,Ariguzo v. K-Mart Corp. (Sept. 30, 1999), 10th Dist. No. 98AP-1268. First, we find that prejudgment interest is appropriate from the date of judgment, even though the amount may be unliquidated at the time of that judgment. R.C. 1343.03(A) (stating "when money becomes due and payable upon * * * all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code"); ContiCorp. v. Ohio Dept. of Adm. Serv. (1993), 90 Ohio App.3d 462
(prejudgment interest may be awarded even where a sum was unliquidated, if it was capable of ascertainment by mere computation).
 {¶ 39} Next, although some courts have analogized the two, attorney fees are not the exact same thing as punitive damages. See, e.g.,Ariguzo, supra. Considering the two from the viewpoint of recoverable interest, as is the case before us, we note that punitive damages involve no aspect of repayment for money expended or lost opportunity to invest that money. Hence, there is no lost profit during the period of time in which the wronged party is without this (punitive damages) money. Conversely, attorney fee awards are comprised of money actually expended by the wronged party, albeit for their attorney, but which could otherwise have been invested and earning some type of profit, interest or otherwise. Therefore, we disagree with GMAC's position that attorney fees are the same as punitive damages for purposes of calculating this post judgment interest.
 {¶ 40} In the present case, the Titchs were awarded a jury verdict on December 7, 2001, which included $180,000 and attorney fees. The trial court entered judgment on that verdict on December 13, 2001. GMAC has not alleged that the Titchs did not pay their attorney the attorney fees at that time. When a party is without money, rightfully awarded to it, for over two years while the parties proceed through a series of post judgment motions, then that party is entitled to interest on that money. See R.C. 1343.03(A). Accordingly, we are not persuaded that the prejudgment interest awarded in this case was inappropriate. GMAC's sixth assignment of error is overruled.
 III. {¶ 41} GMAC's assignments of error are overruled. The decision of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J. Baird, J. Concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] We recognize that, in the ordinary course, a negligence claim based purely on economic loss is not legally cognizable. See ChemtrolAdhesives, Inc. v. American Manufacturers Mut. Ins. Co. (1989),42 Ohio St.3d 40, 44. But, see, Universal Contracting Corp. v. Aug, 1st Dist. No. C-030719, 2004-Ohio-7133, at ¶ 10-11 (recognizing exceptions for misrepresentation and fiduciary duty). However, in the present case, neither this issue nor any exceptions were ever raised at trial or on appeal, and failure to raise an issue at the trial court level reasonably precludes this Court from reviewing the issue. State v. Quine, 9th Dist. No. 20968, 2002-Ohio-6987, at ¶ 7. Therefore, we chose not to speculate on the outcome of an issue that was not contested at trial, charged as error to this Court, briefed or argued.